# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL CASE NO. 3:07-cr-00211-MR-WCM-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| MICHAEL D. PAHUTSKI, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)." [Doc. 548].

**I.    BACKGROUND**

In 2008, the Defendant Michael D. Pahutski was charged in a superseding indictment with conspiracy to violate the laws of the United States by conspiring to commit mail, wire, and bank fraud and conspiring to make false statements to a bank, in violation of 18 U.S.C. § 371 (Count 1); three counts of mail fraud, in violation of 18 U.S.C. §§ 1341, 1346 (Counts 2, 3, and 4); eight counts of bank fraud, in violation of 18 U.S.C. §§ 1344, 1346 (Counts 5, 6, 7, 8, 9, 10, 11, 12); seven counts of making a false statement to a bank, in violation of 18 U.S.C. § 1014 (Counts 13, 14, 16, 18,

20, 22, 23); conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 24); and promotional money laundering, in violation of 18 U.S.C. § 1957. (Count 27). [Doc. 117: Indictment at 8-22, 25]. The Defendant, who was a mortgage broker, had participated in a multi-million dollar mortgage-fraud conspiracy involving the "flipping" of more than 200 properties from an owner to a third party who quickly re-sold the property to another party at a vastly inflated price. [Doc. 344: PSR at ¶¶ 10, 33]. In furtherance of the conspiracy, the Defendant prepared 190 false loan applications, many of which included false bank-account statements or false tax returns that the Defendant prepared. [Id. at ¶¶ 11, 33]. The Defendant's co-conspirators served as the "borrowers" for the transactions, prepared inflated appraisals of the properties to be sold, and handled the legal closings of the properties. [Id. at ¶¶ 11-16]. In March 2009, the Defendant pleaded guilty to each of the charged offenses without a plea agreement. [Doc. 188: Acceptance and Entry of Guilty Plea].

In preparation for sentencing, the probation office prepared a Presentence Report. [Doc. 344: PSR]. The PSR calculated a total offense level of 36 and a criminal-history category of I, which resulted in an advisory Guidelines range between 188 and 235 months in prison. [Id. at ¶ 69]. In

May 2011, this Court sentenced the Defendant to 60 months on Count 1; 228 months on each of Counts 2-14, 16, 18, 20, 22, 23, and 24; and 120 months on Count 27, with all such counts to run concurrently for a total of 228 months' imprisonment. [Doc. 398: Judgment at 3]. The Court further ordered the Defendant to pay $3,563,125.27 in restitution. [Id. at 5].

The Defendant appealed to the Fourth Circuit Court of Appeals. On appeal, counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious grounds for appeal but questioning whether this Court erred in denying the Defendant's motion to withdraw his guilty plea, whether this Court properly calculated the loss amount, and whether the Defendant had received effective assistance of counsel. [See Doc. 425: Fourth Circuit Order]. The Defendant filed a supplemental *pro se* brief in which he asserted the same errors raised by appellate counsel, but also arguing: that the Government was vindictive and malicious in its prosecution of him; that his constitutional rights to due process and a fair and speedy trial were violated; and that his right to examine all of the evidence against him was violated. [Id.]. The Fourth Circuit affirmed the Defendant's convictions and sentence in all respects. [Id.].

In May 2012, the Defendant filed a motion to vacate his convictions and sentences under 28 U.S.C. § 2255, raising a number of issues challenging the effectiveness of counsel, the sufficiency of the evidence, and the validity of his guilty plea, but notably not asserting a claim of actual innocence. [Doc. 428: Motion to Vacate]. This Court denied the Defendant's motion to vacate in May 2014. [Doc. 486: Order].

In May 2015, the Defendant filed a motion in the Fourth Circuit under 28 U.S.C. § 2244, seeking authorization to file a second or successive motion to vacate on the grounds that (1) his conduct was not criminal under Skilling v. United States, 561 U.S. 358 (2010), and (2) his trial and appellate counsel provided constitutionally deficient representation. [Fourth Cir. Case No. 15-177 at 3]. The Fourth Circuit denied the Defendant's motion two weeks later.

The Defendant now asks this Court to grant him compassionate release, arguing that he is actually innocent of his offense under Skilling and that his medical conditions warrant his immediate release. [Doc. 548 at 4-5]. The Court directed the Government to respond to the Defendant's motion. [Text-Only Order dated July 14, 2021]. The Government filed its

4

Response on August 12, 2021. [Doc. 740]. The Defendant subsequently filed a Reply. [Doc. 550; as corrected, Doc. 551].

The Defendant is presently incarcerated at FCI Petersburg Low, and his projected release date is July 3, 2027.[1] While in the Bureau of Prisons, the Defendant has committed one disciplinary infraction and has participated in 14 educational programs or work assignments. [Doc. 549-1: BOP Records]. He has 141 months of credited time. [Id.].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has sufficiently exhausted his administrative remedies with BOP by requesting

---

[1] See https://www.bop.gov/inmateloc/ (last visited Sept. 27, 2021).

compassionate release from the Warden. [Doc. 549 at 3]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,

6

>   (II) suffering from a serious functional or cognitive impairment, or
>
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals held in United States v. McCoy that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court

7

Case 3:07-cr-00211-MR   Document 552   Filed 10/29/21   Page 7 of 12

recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Further, Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t). Ultimately, the Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

In McCoy, the Fourth Circuit recognized that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. In so doing, the court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the Bureau of Prisons, the defendant's prior criminal history, and the defendant's age at the time he committed his offenses. See id.

Here, the Defendant has not alleged that he satisfies any of the criteria for compassionate release authorized in section 1B1.13, nor has he alleged any disparity between the sentence he received and the sentence "provided for under the First Step Act." McCoy, 981 F.3d at 286. Instead, he asks this Court to exercise its discretion to grant him compassionate release because his offense conduct is not criminal under Skilling v. United States, 561 U.S. 358 (2010), and because he suffers from health conditions that present a high risk of serious consequences should he contract COVID-19. [Doc. 548 at 4-5].

The Defendant's contention that he is actually innocent of his fraud offenses under Skilling is not an extraordinary and compelling reason to grant compassionate release. If the Defendant had a valid claim of actual innocence under Skilling, he had ample opportunity to present that claim. The Supreme Court decided Skilling in June 2010, after the Defendant pled guilty but almost a year before he was sentenced in May 2011. The Defendant could have challenged the legality of his convictions before this Court and on direct appeal or in his motion to vacate. The Defendant, however, did none of those things. A defendant cannot use compassionate release to circumvent the law that governs when and how defendants can

9

seek relief for legal errors they allege. Defendant's Motion is, in substance, an attempt to circumvent the limitation on successive § 2255 motions by dressing his claim as one seeking compassionate release.

Even if the Defendant had a valid claim of actual innocence of his fraud convictions under Skilling, he is serving multiple concurrent sentences unrelated to his Skilling claim. The Defendant was sentenced to concurrent 228-month sentences for 11 fraud offenses, seven false-statement offenses, and one money-laundering offense. [See Doc. 398: Judgment at 1-3]. As such, his claim of actual innocence as to only *some* of his convictions cannot constitute an extraordinary and compelling reason justifying his immediate release.

As for the Defendant's argument about his medical condition and his potential risk of serious illness or death from COVID-19, the Defendant has failed to identify any medical issues that warrant the extraordinary relief of compassionate release. The Defendant asserts that he suffers from hypertension, obesity, and an abnormal heart rhythm, all of which he alleges expose him to more serious medical consequences should he contract COVID-19. The Bureau of Prisons, however, has administered more than 200,000 vaccine doses, and although the Defendant does not indicate

10

Case 3:07-cr-00211-MR   Document 552   Filed 10/29/21   Page 10 of 12

whether he has received the vaccine, nearly 400 members of the staff and over 2,000 inmates at his facility have received the vaccine.[2] Because the vaccine is now widely available and reduces the chances that even inmates with conditions such as hypertension and obesity will suffer serious consequences from COVID-19, the Defendant's health conditions do not constitute an extraordinary and compelling reason to grant him compassionate release.

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). The Defendant's offense conduct was extensive and serious, and he caused his victims millions of dollars of loss. Additionally, the Defendant's efforts at rehabilitation have been modest, at best. In the nearly ten years he has been imprisoned, he has completed only eleven educational programs or work assignments. While the Defendant suggests that his sentence is unjustifiably higher than his co-defendants'

---

[2] See BOP COVID-19 Response, https://www.bop.gov/coronavirus/ (vaccinations statistics for FCC Petersburg) (last visited Sept. 29, 2021).

sentences, his sentence was within the range advised by the Sentencing Guidelines and the nature and circumstances of his offense conduct, the need to protect the public, the need for deterrence, and the need to promote respect for the law all counsel in favor of a Guidelines sentence.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Motion for Compassionate Release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)" [Doc. 548] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 28, 2021

Martin Reidinger
Chief United States District Judge